UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEVIN DWAYNE THERIOT,

        Plaintiff,

v.

JEFFREY WOODS et al.,

        Defendants.
_____/

Case No. 2:18-cv-92

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, Petaga, Hennigs, Lee, LaForest, Marshall, Bessener, Berry, Horocs, Fliccano, Washington, Thompson, Niemi, Jonqreva, Healey, Lesatz, Tribley, Mackie, Miller, Ledare, Burke, Place, Mohr, Tasson, Niemisto, Jeffries, Bouchard, Dalotts, Spluie, Tussing, Russell, Hoffman, Raymond, Calzetta, Szganlessory, Huhta, Pesola, Dube, Kutchie, Hemmila, Morgan, LaChance, Goodreva, Velma, Phillips, Skytta, Bray, Evans, Holma, Cluster, Hosafro, and Bessner.

**Discussion**

    I.    Complaint

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. In Plaintiff's complaint, he names Defendants Warden Jeffrey Woods, Inspector Unknown Petaga, Lieutenant Unknown Hennigs, Sergeant Unknown Lee, Lieutenant Unknown LaForest, Assistant Deputy Warden Unknown Marshall, Assistant Resident Unit Supervisor Unknown Bessener, Assistant Resident Unit Supervisor Unknown Latnen, Sergeant Unknown Berry, Assistant Deputy Warden Unknown Huss, Assistant Resident Unit Supervisor Unknown Horocs, Librarian Unknown Fliccano, Warden Robert Napel, Resident Unit Manager Unknown Vitteleo, MDOC Director Heidi Washington, Sergeant Unknown Thompson, Resident Unit Manager Unknown Niemi, Resident Unit Manager Unknown Jonqreva, Assistant Resident Unit Supervisor Gina Healey, Deputy Warden Daniel Lesatz, Deputy Warden Unknown Tribley, Warden Thomas Mackie, Prison Counselor Unknown Miller, Assistant Resident Unit Supervisor Unknown Ledare, Assistant Resident Unit Supervisor Unknown Burke, Warden Shane Place, Inspector and Grievance Coordinator Unknown Mohr, Inspector Unknown Tasson, Inspector Unknown Niemisto, Nurse Supervisor Aaron Jeffries, Healthcare Supervisor Gloria Hill, Doctor Unknown Oh, Nurse Unknown Meals, Nurse Unknown Duecetti, Law Librarian Unknown Bouchard, Nurse Unknown Dalotts, Prison Counselor Spluie, Sergeant Unknown Tussing, MDOC Hearings Administrator Richard Russell, Administrative Assistant Unknown Hoffman, Hearings Investigator Unknown Raymond, Prison Counselor Unknown Calzetta, Hearing Officer M. Szagganlessory, and Nurse Unknown Sunberg.

Plaintiff also lists the following Corrections Officers as defendants in his complaint: Unknown Huhta, Unknown Pesola, Unknown Dube, Unknown Kutchie, Unknown Hemmila, Unknown Morgan, Unknown LaChance, Unknown Goodreva, Unknown Velma, Unknown Phillips, Unknown Skytta, Unknown Bray, Unknown Evans, Unknown Holma, Unknown Cluster, Unknown Hosafro, and Unknown Bessner.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Plaintiff's complaint consists of twelve typewritten pages of facts, supplemented by handwritten pages which restate and expand upon the allegations set forth on the typewritten pages and assert an additional denial of health care claim against Defendants Hill, Oh, Meals, Duecetti, and Sunberg, a denial of access to courts claim regarding the interference with his ability to file grievances on the 2013 use of a chemical agent, and a due process claim regarding his placement in administrative segregation.

Upon review of Plaintiff's complaint, the Court notes that the typewritten pages are identical to a typewritten complaint filed in Case No. 2:17-cv-160, which the Court summarized as follows:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Michigan. The events about which he complains occurred at that facility and the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Warden Jeffrey Woods, Corrections Officers Unknown Huhta, Unknown Pesola, Unknown Dube, Unknown Kutchie, and Unknown Hemmila, Inspector Unknown Petaga, Corrections Officers Unknown Morgan, Unknown LaChance, Unknown Goodreva, Unknown Velma, and Lieutenant Unknown Hennigs, Sergeant Unknown Lee, Corrections Officers Unknown Phillips, Unknown Skytta, Unknown Bray, Lieutenant Unknown LaForest, Corrections Officer Unknown Evans, Assistant Deputy Warden Unknown

3

Marshall, Assistant Resident Unit Supervisor Unknown Bessener, Assistant Resident Unit Supervisor Unknown Latnen, Sergeant Unknown Berry, Assistant Deputy Warden Unknown Huss, Assistant Resident Unit Supervisor Unknown Horocs, Librarian Unknown Fliccano, Warden Robert Napel, Resident Unit Manager Unknown Vitteleo, MDOC Director Heidi E. Washington, Sergeant Unknown Tussing, Hearings Administrator Richard Russell, Administrative Assistant Unknown Hoffman, Hearings Investigator Unknown Raymond, Prison Counselor Unknown Calzetta, Hearing Officer M. Szagganlessory, Nurse Unknown Sunberg, and Corrections Officer Unknown Bessner.

Plaintiff alleges that on January 29, 2013, officials at URF used excessive force when they used a chemical agent on him after he refused to pack up his property for a transfer. Plaintiff states that the use of chemical agent was ordered by Defendant Woods. On January 30, 2013, Plaintiff was transferred to AMF. Plaintiff states that while at AMF, he told SCC (Security Classification Committee) members about the January 29, 2013, excessive force.

Plaintiff was transferred to MBP sometime in 2016, and immediately informed staff about the January 29, 2013, excessive force incident. Plaintiff sent documents regarding the incident to the Grievance Coordinator, Inspectors, and Defendants Napel, Horocs, and Huss, but they kept the documents and ignored Plaintiff's complaint in order to protect staff at URF. Plaintiff claims that these same individuals moved him frequently so that he could not pursue his claim. Plaintiff states that Defendants Goodreva, LaChance, Huhta, Velma, and Huss wrote retaliatory tickets on Plaintiff. Plaintiff alleges that Defendant Goodreva had him placed in segregation on October 2, 2014, and Defendant Huss had him placed in segregation on April 29, 2016, both times in retaliation for Plaintiff bringing up the January 29, 2013, excessive force incident. Plaintiff also states that Defendant LaChance stole his deodorant.

Plaintiff contends that he has been the victim of stalking and sexual harassment by Defendants Huhta, Pesola, Dube, Hemmila, Lee, Morgan, and Berry, as well as other prison officials. Plaintiff alleges that between June 5, 2014, and September 22, 2014, Defendant Hemmila sexually harassed him by tampering with Plaintiff's store lists, watching Plaintiff while he went about his business, standing too close to Plaintiff, and making gyrating motions of his hips while looking at Plaintiff. Plaintiff claims that between October 2, 2014, and December 28, 2015, Defendant Huhta "ogled" Plaintiff while passing out food trays and while Plaintiff was in the shower. Plaintiff claims that during this same time, Defendants Pesola and Kutchie made inappropriate comments toward Plaintiff, like referring to him as "big man," and peeked at Plaintiff while he was in the shower. Plaintiff also states that Defendants attempted to prevent female corrections officers from working around Plaintiff because they were jealous of Plaintiff being able to see any females. Plaintiff claims that Defendant Morgan purposefully shook Plaintiff and other prisoners down at shower time solely for his own sexual gratification. Plaintiff also makes numerous allegations against Assistant Resident Unit Supervisor Burke regarding stalking behavior. However, Plaintiff fails to name

4

Assistant Resident Unit Supervisor Burke as a defendant in this case. Plaintiff claims that he "had so many sexual stalkers [he] would go to yard maybe only once a week and [for] haircuts."

Plaintiff contends that he has given numerous grievances, complaints, and documents on the issue of his January 29, 2013, assault to staff for mailing, but was never provided with an official address. Plaintiff states that Defendant Russell never responded to his request for a rehearing for some unspecified misconduct, which Plaintiff claims denied him due process.

On April 29, 2016, Plaintiff received a misconduct ticket while in segregation, but never received a hearing on that misconduct. On May 3, 2016, Plaintiff was protesting the fact that he had been illegally gassed on January 29, 2013, and that he had been illegally placed in segregation on April 29, 2016, without the issuance of either a misconduct or a Notice of Intent. Plaintiff states that he had his aunt Cheryl Theriot and the block unit representatives involved in his case, which led to his segregation. In order to protest, Plaintiff claimed to be suicidal and said he would only come out of his cell if staff officially acknowledged his claim of excessive force, which occurred on January 29, 2013. Once confronted by staff, Plaintiff admitted that he was not suicidal and just wanted due process. Thereafter, Plaintiff was gassed and while he was unable to see, Defendant Lee stuck a finger or thumb in Plaintiff's rectum. A hearing was held on an assault charge against Plaintiff, but he was not informed of the hearing. Plaintiff was not cleared out of suicide watch by a psychiatric professional until May 6, 2016. Plaintiff wrote several grievances, which were never processed.

Plaintiff continued to write the Michigan Democratic House Speaker, which forced Hearing Officer Maki to give Plaintiff a fair hearing and find him "not guilty" of the retaliatory ticket. Plaintiff claims that in her findings, Hearing Officer Maki noted that something had been placed in Plaintiff's rectum during his time in segregation and asked that a questionnaire be ordered on AMF personnel. It appears that Plaintiff was confined at AMF by the time the hearing was held, and he alleges that staff at AMF withheld the questionnaire in order to protect MBP personnel.

While at MBP, Plaintiff attempted to bring attention to the misconduct of staff by sending complaints to Defendants Napel and Washington, and the Civil Service Commission, none of whom responded. When the evidence began to pile up, Plaintiff attempted to send copies of his complaints to Defendant Washington, Internal Affairs, the Ombudsman, Governor Rick Snyder, FOX News, CNN News, Humanity for Prisoners, the President of the USA, the Michigan State Police, the Department of Justice, and local news channels. Plaintiff claims that he had the correct amount of money in his account to cover the postage, but that Defendant Latnen refused to mail the complaints, citing a "trumped up" postage weight and saying that Plaintiff did not have enough money. Plaintiff claims that Defendants Vitteleo, Huss, and Napel approved this action. Plaintiff states that he could tell

5

that his mail had been illegally opened and read, presumably by Defendants Latnen, Vitteleo, Huss, and Napel.

On September 22, 2016, Plaintiff sent evidence of the mail tampering to the library to have copies made. Defendant Fliccano made the copies, but then called Defendant Latnen about the copies. Defendant Latnen then called Defendants Vitteleo, Huss, and Napel, who instructed her to keep the copies. After a couple of days, Plaintiff wrote to Defendants Fliccano and Latnen asking about the status of his copies. Both Fliccano and Latnen responded that they did not have the copies and did not know anything about them. Plaintiff then made an unsuccessful attempt to force staff to return his copies by breaking the cell sprinkler head and refusing to come out of his cell. Defendant Phillips wrote Plaintiff "retaliatory" tickets and Plaintiff was placed on food loaf.

On November 21, 2016, Defendant Morgan, who Plaintiff previously named as a sexual stalker and harasser, grabbed Plaintiff's buttocks while Plaintiff was on the way to recreation yard. This was observed by Officer Maudrie. Finally, Plaintiff claims that on February 14, 2017, he was ordered to exit his cell after barricading himself in his cell because he was afraid of additional "assaults, sexual assaults, sexual harassment, sexual stalking and retaliatory tickets." Plaintiff was removed from his cell by a move team pursuant to the orders of Defendants Marshall, and Bessner.

*Theriot v. Woods, et al.*, Case No. 2:17-cv-160, ECF No. 17, PageID.297-301 (W.D. Mich. Jun. 26, 2018).

After screening Plaintiff's complaint in Case No. 2:17-cv-160, the Court concluded that the only nonfrivolous claims in Plaintiff's complaint were his First Amendment claims against Defendants Latnen, Vitteleo, Huss, and Napel regarding interference with his outgoing mail. The remainder of Plaintiff's claims were dismissed for failure to state a claim upon which relief may be granted. *Id.,* PageID.313-314. On June 26, 2018, the Court granted Plaintiff's motion to voluntarily dismiss his First Amendment claims against Defendants Latnen, Vitteleo, Huss, and Napel without prejudice. *Id.,* ECF Nos. 38 and 39.

The Court further notes that Plaintiff's complaint in *Theriot v. Woods, et al.*, Case No. 2:18-cv-193 (W.D. Mich., Nov. 30, 2018), also asserted claims related to the same allegations. In Case No. 2:18-cv-193, the Court noted:

6

Plaintiff Kevin Dwayne Theriot is presently incarcerated with the Michigan Department of Corrections (MDOC) at Baraga Correctional Facility (AMF) in Baraga, Michigan. The events about which he complains occurred at that facility, Marquette Branch Prison (MBP), and Chippewa Correctional Facility (URF). Plaintiff sues over 70 defendants, most of whom are employees of the MDOC.

This is Plaintiff's fourth civil rights action alleging that he was "gassed" by prison officials on January 29, 2013. (*See* Compl., ECF No. 1, PageID.6.) Plaintiff himself states that this action is "slightly modified from Case No. 216-cv-234, 217-cv-160, and 218-cv-92." (Theriot Aff., ECF No. 5, PageID.68.) Apparently, Plaintiff has complained about this incident to numerous prison officials and government officers over the years, and as a result of his complaints, grievances, and attempts to seek redress, prison officials have allegedly retaliated against him by interfering with his legal mail, placing him in segregation, writing misconduct tickets, ignoring his medical needs, and physically and sexually assaulting him.

Plaintiff initially filed a complaint about the January 29, 2013, incident in *Theriot v. Woods et al.*, No. 2:16-cv-234 (W.D. Mich.) ("*Theriot I*"). The Court dismissed that case in September 2017 due to lack of prosecution, so Plaintiff filed another complaint that same month, naming approximately 38 defendants, *Theriot v. Woods et al.*, No. 2:17-cv-160 (W.D. Mich.) ("*Theriot II*"). In *Theriot II*, the Court dismissed all but four of the 38 defendants for failure to state a claim. Plaintiff subsequently dismissed the action against the remaining defendants voluntarily and then filed another iteration of the same complaint in *Theriot v. Woods et al.*, No. 2:18-cv-92 (W.D. Mich.) ("*Theriot III*").

When Plaintiff filed *Theriot III* in June 2018, he simply took the typewritten complaint from *Theriot II* and supplemented it with a handwritten page listing 28 additional defendants, and several handwritten pages alleging additional facts.

Apparently unwilling to wait for a resolution in *Theriot III*, Plaintiff filed this action in October 2018. The complaint in this action contains the exact same complaint in *Theriot III*, but Plaintiff has added 11 additional defendants (*see* Compl., PageID.5), and approximately 5 more pages of handwritten allegations (*see id.*, PageID.29-33).

In other words, there is a substantial overlap between the complaints in *Theriot II*, *Theriot III*, and the instant case. All three actions share the same original 38 defendants (many of whom were dismissed for failure to state a claim in *Theriot II*), and the same allegations in numbered paragraphs 1 through 69 of the complaint. In addition, *Theriot III* and this action share the same additional 28 defendants, and the same additional allegations in numbered paragraphs 10.1 to 14.1, and 70 to 73. *Theriot III* is still pending.

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977).

7

Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. Calif. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953-54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

In addition, courts have held that an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be dismissed under 28 U.S.C. § 1915(e)(2) as frivolous or malicious. *See, e.g.*, *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that an action may be dismissed as frivolous under 28 U.S.C. § 1915 when the complaint "merely repeats pending or previously litigated claims"); *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993) (finding that it is "malicious" for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (affirming dismissal of an *in forma pauperis* prisoner civil rights suit where suit was duplicative of facts and allegations made in previously dismissed suit, and merely named a different defendant whose actions formed a partial basis for the previous suit).

A complaint is duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Although complaints may not "significantly differ," they need not be identical. *See, e.g.*, *Bailey*, 846 F.2d at 1021 (holding that a complaint was duplicative although different defendants were named because it "repeat[ed] the same factual allegations" asserted in the earlier case). Here, where the bulk of the complaint contains the same allegations asserted in another pending action, and where the majority of the defendants are the same as in that action, the Court concludes that the present complaint is duplicative.

Although the complaint in this action has some allegations and parties that are not present in *Theriot III*, it is not proper for a plaintiff to duplicate a complaint from another pending action, supplement it with a few additional allegations and defendants, and then file it in a new action, as Plaintiff did when he filed the instant case. This sort of conduct unnecessarily multiplies proceedings against the same defendants and wastes judicial resources.

It also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The PLRA contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal

for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). This provision was an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998). Plaintiff has already received "three strikes" under § 1915(g), and he appears to be using some of the same allegations from *Theriot III* to qualify for the exception to the three-strikes rule for a prisoner who is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). In *Theriot III* and this case, he alleges that he is not being treated for blood in his feces and that he is at risk of assault from prison officers. If Congress created the "imminent danger" exception to address the concern that prisoners with three strikes would not be able to seek redress for especially serious claims, then that concern should be satisfied by one lawsuit focused on the danger at issue. A prisoner generally should not be permitted to circumvent the three-strikes rule by relying on the same danger to proceed with multiple lawsuits against an ever-expanding universe of defendants.

Furthermore, the Federal Rules of Civil Procedure already provide Plaintiff with a means to amend or supplement a complaint, or to add parties to an existing action. Indeed, Plaintiff is plainly aware of these rules, as he has already filed a motion in *Theriot III* to supplement his complaint with the additional allegations and defendants that he added to this action, and that were not in the original complaint in *Theriot III*. (*See Theriot III*, ECF No. 8.) Plaintiff should make use of the rules available to him instead of filing slightly modified versions of the same complaint over and over again in new actions. Therefore, pursuant to the Court's inherent power and 28 U.S.C. § 1915(e)(2), the complaint will be dismissed on the grounds that it is duplicative and frivolous.

(*Id.* 2:18-cv-193, ECF No. 12, PageID.97-101.)

As noted above, Plaintiff's complaint in this case lists all of the Defendants named in Case No. 2:17-cv-160, in addition to 14 additional Defendants, and asserts the same alleged misconduct on the part of the previously named Defendants. Consequently, the majority of Plaintiff's claims in this lawsuit are barred by the res judicata effect of the Court's decision in Case No. 2:17-cv-160. The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir.

9

1994); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at *1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The only claims that were previously raised in Case No. 2:17-cv-160, which are not barred by the res judicata effect of the Court's decision in that case are Plaintiff's First Amendment claims against Defendants Latnen, Vitteleo, Huss, and Napel regarding interference with his outgoing mail, which were dismissed without prejudice. For the reasons set forth in the April 4, 2018, opinion in Case No. 2:17-cv-160, Plaintiff's First Amendment mail claims against Defendants Latnen, Vitteleo, Huss, and Napel are nonfrivolous and may not be dismissed on initial review.

As noted above, Plaintiff has added an additional denial of health care claim against Defendants Hill, Oh, Meals, Duecetti, and Sunberg, a denial of access to the courts claim regarding the interference with his ability to file grievances on the 2013 use of a chemical agent, and a due process claim regarding his placement in administrative segregation. In addition, Plaintiff lists Defendants Mohr, Tasson, Niemsto, Holma, Cluster, Hosafro, Jeffries, Hill, Oh, Meals, Duecetti, Bouchard, Dalotts, and Spluie in this case. These individuals were not named as Defendants in 2:17-cv-160.

Plaintiff claims that Defendants interfered with his ability to exhaust his grievances regarding the January 29, 2013, use of a chemical agent, which violated his First Amendment right to access the courts. Plaintiff previously asserted that he was prevented from exhausting his administrative remedies in violation of his due process rights in Case No. 2:17-cv-160. Res judicata bars all claims that were or could have been advanced in support of Plaintiff's cause, not merely those which were adjudicated. *Ocean Drilling & Exploration Company, Inc. v. Mont Boat Rental Services*, 799 F.2d 213, 217 (5th Cir. 1986); *Jennings v. Caddo Parish School Board*, 531 F.2d 1331 (5th Cir. 1976). The doctrine dictates that there be an end to litigation. It further mandates that those who have contested an issue be bound by the results of the contest. *Baldwin v. Traveling Men's Association*, 283 U.S. 522, 525 (1931). Even an erroneous conclusion reached by a court in an original action does not deprive a defendant in a subsequent action of the right to rely on the plea of res judicata. *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927). It is direct review by appeal, not the filing of new complaints concerning the same issues, that corrects any erroneous conclusions a court might make. *Equitable Trust Company v. Commodity Futures Trading Commission*, 669 F.2d 269 (5th Cir. 1982).

The previous lawsuit was between the same parties or their privies. While not every Defendant in the current case was named in Case No. 2:17-cv-160, they are clearly in privity with the previous defendants, as the factual bases for the claims are identical. *See Jackson v. Pline*, No. 92-1172, 1992 WL 203760, at *1 (6th Cir. Aug. 20, 1992) ("Although Jackson named different state employees in the second case, he is barred from raising the same claim against them as they are in privity with the previous defendants."); *see also, Randles*, 965 F.2d at 93 (non-mutual claim preclusion appropriate when pro se litigant brings repeated actions upon same operative facts with slight change in legal theories). "A plaintiff may not sue a succession of state employees on the

same claims solely on the ground that each employee is not 'identical' to previously sued employees." *Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983); *Bloomquist v. Brady*, 894 F. Supp. 108, 114 (W.D.N.Y. 1995) (collecting cases). If the law were otherwise, Plaintiff would have the ability to sue a new set of defendants every time he is transferred to a new prison, asserting the same claims previously adjudicated against him. Therefore, Plaintiff's access to the courts claim is properly dismissed.

Plaintiff claims that on April 29, 2016, he was improperly placed in segregation in violation of his due process rights. On May 3, 2016, Plaintiff claimed that he was suicidal in order to force staff to acknowledge Plaintiff's claim that he had been assaulted at URF. Plaintiff states that once he was confronted by staff, he told them that he was not actually suicidal. Plaintiff states that because he was on suicide watch until May 6, 2016, he was not allowed to attend his misconduct hearing on May 4, 2016.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008). Plaintiff fails to allege any facts showing that his confinement in segregation constituted an atypical and significant hardship. Therefore, this claim is properly dismissed.

Finally, Plaintiff asserts Eighth Amendment denial of health care claims against Defendants Hill, Oh, Meals, Duecetti, and Sunberg. Plaintiff states that he is suffering from blood in his stools that worsened since he was gassed in 2013. Plaintiff states that he has never received treatment for this affliction and that it is sometimes so bad that he is passing clots of blood. Plaintiff asserts that he has reported this condition to Defendants Hill, Oh, Meals, Duecetti, and Sunberg, but they have refused to provide him with any diagnostic tests or treatment. The Court concludes that this claim is nonfrivolous and may not be dismissed on initial review.

II.     Pending Motions

Plaintiff has also filed motions to supplement his complaint by adding parties and claims (ECF Nos. 8, 17, and 18). In his first motion to supplement, Plaintiff seeks to add Governor Rick Snyder, Prosecutor Joseph O'Leery, Prison Counselor Unknown Bastian, Corrections Officers Unknown Madden and Unknown Pollard, United States District Judge Janet T. Neff, United States Magistrate Judge Timothy P. Greeley, Representatives Dan Kildee and Tim Griemel, and Legislative Ombudsmen Keith Barber and Olivia Ghislan for claims arising in July of 2017. (ECF No. 8.) In Plaintiff's second motion, which he calls a "motion to amend complaint," he

seeks to add Chippewa Correctional Facility (URF) Corrections Officers Unknown Larson, Unknown Bender, Unknown Libby, and Unknown Parties ##1-3, all of whom he intended to name in his original complaint. (ECF No. 17.) Plaintiff does not make any factual allegations in this filing, but merely names the additional parties. In addition, Plaintiff did not include a proposed amended complaint with this motion, therefore it is properly construed as a motion to supplement. Finally, in Plaintiff's most recent motion to supplement, he sets forth allegations of misconduct by Lesatz, Kutchie, Barber, Ghislan, Holma, Goodreva, Hoffman, Pollard, Madden, Huhta, and Pesola that occurred in December of 2018. (ECF No. 18.)

After carefully reviewing Plaintiff's motions to supplement his complaint (ECF Nos. 8, 17, 18), the Court concludes that they are properly denied because to grant such motions would violate both Rule 18(a) and 20(a) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA

15

also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent

16

the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to improperly join the claims being asserted in his motions to supplement would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of the proposed new claims turn out to be frivolous.

As noted above, the only claims asserted in Plaintiff's complaint which are not properly dismissed are his First Amendment interference-with-mail claims against Defendants Latnen, Vitteleo, Huss, and Napel and his Eighth Amendment denial of health care claims against Defendants Hill, Oh, Meals, Duecetti, and Sunberg. The claims set forth in Plaintiff's motions to supplement are completely unrelated to his pending claims. Therefore, the Court will deny Plaintiff's motions to supplement his complaint (ECF Nos. 8, 17, and 18).

Plaintiff also filed a motion for "help with full names" of Defendants (ECF No. 3). As noted above, Plaintiff's complaint is to be served on Defendants Latnen, Huss, Napel, Vitteleo, Hill, Oh, Meals, Duecetti, and Sunberg. Unless there is an issue with service on these Defendants, there is no need for Plaintiff be provided with the full names of Defendants. Therefore, Plaintiff's motion is premature and is properly denied.

Plaintiff filed a motion for a preliminary injunction (ECF No. 4), in which he seeks to be released from segregation and to be given a restraining order on all defendants named as sexual stalkers, sexual harassers, and unknown staff who were part of the move team on February 14, 2017. Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v.*

17

*Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim or First Amendment claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff has not demonstrated a pressing need to be released from segregation or for a restraining order against all defendants named as "sexual stalkers, sexual harassers, and unknown staff who were part of the move team on February 14, 2017." Moreover, Plaintiff's statement that he is not able to get health care because his fear of being assaulted and retaliated against has caused him to barricade himself in his cell is completely unsupported. As noted above, this Court has dismissed Plaintiff's Eighth Amendment claims regarding alleged sexual assaults because they fail to state a claim.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary injunction (ECF No. 4) will be denied.

Plaintiff filed a motion to expedite consideration of his motions to proceed *in forma pauperis* and for a preliminary injunction (ECF No. 5). Plaintiff's motion is unnecessary and is properly denied.

Finally, Plaintiff filed a motion for appointment of counsel (ECF No. 9). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, the Court will deny Plaintiff's request for appointment of counsel (ECF No. 9).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Woods, Petaga, Hennigs, Lee, LaForest, Marshall, Bessener, Berry, Horocs, Fliccano, Washington, Thompson, Niemi, Jonqreva, Healey, Lesatz, Tribley, Mackie, Miller, Ledare, Burke, Place, Mohr, Tasson, Niemisto, Jeffries, Bouchard, Dalotts, Spluie, Tussing, Russell, Hoffman, Raymond, Calzetta, Szagganlessory, Huhta, Pesola, Dube, Kutchie, Hemmila, Morgan, LaChance, Goodreva, Velma, Phillips, Skytta, Bray, Evans, Holma, Cluster, Hosafro, and Bessner will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment interference with mail claims against Defendants Latnen, Vitteleo, Huss, and Napel, and his Eighth Amendment denial of health care claims against Defendants Hill, Oh, Meals, Duecetti, and Sunberg remain in the case.

Plaintiff's pending motions (ECF Nos. 3, 4, 5, 8, 9, 17, and 18) will be denied.

An order consistent with this opinion will be entered.


Dated: February 1, 2019          /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge